**UNITED STATES of America**

v.

**James D. LANCASTER.**

**Crim. No. 350–72.**

United States District Court, District of Columbia.

Jan. 8, 1976.

William Collins, Chief, Felony Trial Div. of the District Court, Washington, D. C., for the United States.

Laurence Sarezky, Washington, D. C., for the defendant.

## MEMORANDUM AND ORDER

FLANNERY, District Judge.

This matter is before the court on the motion of the defendant James D. Lancaster to dismiss with prejudice a three-count indictment charging him with felony murder, second degree murder and robbery and the government's opposition thereto.

On January 2, 1972, the defendant was arrested and charged with felony murder. The essential facts giving rise to the charges reveal that on the evening of January 1, 1972, the defendant in company with the co-defendants Gelena Beavers and Roberta G. Tyson met one Hezekiah Griffin in a bar located at 4th and K Streets, Northwest. On the pretext of performing sexual acts with Griffin they lured him to an apartment at 458 K Street, Northwest where they proceeded to rob him of approximately $200. After beating him severely during the robbery the defendants then threw their victim out of a third story window causing multiple injuries which resulted in death.

On February 17, 1972, Lancaster, Tyson and Beavers were indicted in a three-count indictment charging them with felony murder, second degree murder and robbery.[1]

On February 28, 1972, the defendant Lancaster was arraigned and entered a plea of not guilty to the indictment. On March 6, 1972, an oral motion of the defendant for a mental examination was granted by the court, and the defendant was committed to Saint Elizabeth's Hospital for a mental examination.

On April 28, 1972, a status call was held at which time a trial date of August 23, 1972 was set for all defendants. On May 11, 1972, a letter from Saint Elizabeth's Hospital was received stating that Lancaster was mentally competent to stand trial.[2]

---

1. On June 23, 1972, Roberta Tyson pleaded guilty to second degree murder and on March 16, 1973 was sentenced to a term of from 3 to 20 years. On October 20, 1972, Gelena Beavers pleaded guilty to robbery, and on January 22, 1973 received a suspended sentence of 3 to 10 years with probation for 5 years. Both Tyson and Beavers agreed to testify for the government and are still available for that purpose.

2. The letter dated May 9, 1972 and signed by Elizabeth R. Strawinsky, M.D., Acting Associate Director for Forensic Programs stated in pertinent part:

Dr. Robert H. Robertson, a qualified member of the psychiatric staff of this Hospital, recently examined Mr. Lancaster and the following determinations were made in collaboration with Dr. David M. Powell, staff psychologist, at a medical staff conference. He

On May 31, 1972, a further status call was held concerning Lancaster's case at which time an oral motion of the defendant for a mental competency hearing was granted. On June 30, 1972, a competency hearing was held and the defendant was adjudicated incompetent to stand trial. At this time the court set aside the scheduled trial date of August 23, 1972.[3]

By letter dated July 31, 1973, Saint Elizabeth's Hospital advised the court that Lancaster was mentally incompetent to stand trial and was likely to remain incompetent for trial indefinitely.[4] Thereafter on October 1, 1973, the defendant filed a motion pursuant to *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 425 (1972) seeking to be released to the custody of his Aunt or alternatively that the government institute civil commitment proceedings within 15 days. On October 26, 1973, another competency hearing was held and Lancaster was again determined to be incompetent to stand trial and additionally that he would not regain his competency within the foreseeable future. At this time the court directed the government to institute civil commitment proceedings within 15 days. Pursuant to this order Dr. F. Jay Pepper of the staff of Saint Elizabeth's Hospital certified on December 18, 1973 that Lancaster was mentally ill and dangerous. However, the Mental Health Commission, after hearing testimony, rejected the government's petition for civil commitment.[5]

On January 18, 1974, the court held a further hearing on the defendant's motion and ordered him released from Saint Elizabeth's Hospital to the third-party custody of his Aunt. The court further ordered that the defendant undergo a psychiatric examination to review the status of his mental competency every six months.

has been diagnosed organic brain syndrome with alcohol, and *is competent for trial by virtue of having a rational as well as factual understanding of the proceedings pending against him and being able to consult with counsel with a reasonable degree of rational understanding.* Furthermore, on or about January 1, 1972, the date of the alleged offenses he had non-psychotic organic brain syndrome with alcohol, a mental disease which substantially impaired his mental processes; however, if the alleged offenses were committed by him they were not the product of this disease. (Emphasis supplied).

3. The government did not request a continuance of the trial date of August 23, 1972 and has been prepared to go to trial at all times.

4. The letter signed by William H. Dobbs, M.D., Acting Director, Division of Forensic Programs, stated in pertinent part:

He was recently reexamined by Dr. Robert E. Robertson, psychiatric consultant, and the following determinations have been made. He is incompetent for trial by virtue of not having a rational or factual understanding of the proceedings pending against him and not being able to consult with counsel with a reasonable degree of rational understanding. It is further our opinion that he is likely to remain incompetent for trial indefinitely. Furthermore, on or about January 1, 1972, the date of the alleged offenses, he had non-

psychotic organic brain syndrome with alcohol, a mental disease which substantially impaired his mental processes; however, if the alleged offenses were committed by him, they were not a product of this disease.

5. Dr. Pepper in his certificate related that he had found the following

The patient exhibits severe memory loss for both recent and distant events. He shows anxiety and perservation (sic). His insight and judgment are grossly deficient. During the interview which took place 12/17/73, he exhibited severe psychomotor retardation. *Review and discussion of other professional observers' findings indicates a substantial amount of malingering, related, in my opinion, to his present legal status (i. e., facing pending murder charges).* However, underneath the malingering, this patient appears to be psychologically deeply dependent upon alcohol; he demonstrates severe symptoms of an inadequate or immature personality; he is subject to heavy abuse of alcohol, contributing to his present chronic brain syndrome. The record indicates clearly his dangerous behavior toward others.

I hereby certify that, in my opinion, the person above named is mentally ill, suffering from 309.13: Non-psychotic organic brain Syndrome with alcohol, and because of such illness is likely to injure himself or others if allowed to remain at liberty. (Emphasis supplied).

On September 13, 1974, another status call was held at which time the court was advised that Dr. Thomas Mould, Staff Psychiatrist, Forensic Psychiatric Services, had examined Lancaster on two occasions and was of the opinion that the defendant was mentally incompetent to stand trial and that his condition would not improve in the foreseeable future.

On December 9, 1974, the court denied a motion filed by the defendant to dismiss Counts One through Three of the Indictment after consideration of the testimony of Dr. Mould and oral argument by counsel for the parties.

On October 9, 1974, Dr. Mould at the direction of the court filed another report with the court which stated his opinion that the defendant's mental condition had deteriorated and that he was still incompetent to stand trial.

On October 17, 1975, Dr. Mould testified further that in his opinion Lancaster would probably never regain his competency. Evidence at this hearing further revealed that the defendant was still residing with his Aunt and was working as a menial laborer for Lyons Nursery in Silver Spring, Maryland.

On October 28, 1975, the defendant, through counsel, filed another motion to dismiss the indictment. On November 17, 1975, the government filed a reply opposing the defendant's motion to dismiss and on November 28, 1975, the defendant filed a response to the government's reply.

The defendant contends that the only logical conclusion which may be derived from the weight of the unanimous medical opinions compiled in this case is that the defendant will not at any time in the foreseeable future be mentally competent to stand trial and that the maintenance of the indictment against him with no foreseeable opportunity for the defendant to stand trial is clearly in violation of his constitutional right to equal protection, due process, and the Sixth Amendment right to speedy trial.

The government on the other hand asserts that since the defendant is not incarcerated or being held involuntarily in a mental hospital pending trial that any equal protection or due process problems do not exist in this case. The government relying heavily on *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), states further that the court must consider the length of the delay, the reason for the delay, defendant's assertion of his right and the prejudice to the defendant, and that after evaluating this case in the light of these four conditions together, it is clear that the defendant's right to speedy trial has not been violated.

■ This case presents a novel question in this jurisdiction. The Supreme Court of the United States has recently held that a person charged with a criminal offense who has been committed solely because of his mental incapacity to proceed to trial cannot be held more than a reasonable period of time to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it appears that the defendant will not be mentally competent to stand trial in the foreseeable future, the government must either institute the customary civil commitment proceedings that would be required to commit indefinitely any other citizen, or release the defendant. *Jackson v. Indiana,* 406 U.S. at 738, 92 S.Ct. 1845, 32 L.Ed.2d 425. In this case, the government has complied fully with the dictates of *Jackson.*

■ In considering a claimed violation of the right to a speedy trial, each case must be considered on its own facts. In the court's view of this case, the most important consideration is the fact that the defendant can show no prejudice caused to him by the delay in bringing him to trial. The witnesses to the alleged murder are still available as well as the medical witnesses and records at Saint Elizabeth's Hospital, and will presumably be available for some time in the future. The holding of the charges in abeyance will not cause the defendant any anxiety or harm him in any way because Dr. Mould has testified that he

is not aware of the pending charges. The defendant's employer is aware of the pending charges and continued to employ him, and the defendant is not incarcerated but is living in the community with his Aunt.

No public interest would be served by dismissing the indictment in this case where the defendant stands charged with felony murder, committed under most aggravated circumstances just four years ago. Psychiatry is an inexact science as any qualified psychiatrist will readily admit. There remains the possibility, remote as it seems at the moment, that this defendant may regain his mental capacity to stand trial. This court is aware of many criminal cases where defendants have made seemingly miraculous recoveries after pending criminal charges have been dropped or there has been an acquittal by reason of insanity.

The delay in this case has been caused solely by the defendant and brought about by matters beyond the government's control. From the outset, the government has been ready for trial and has never sought a continuance. For the reasons set forth above, it is by this court this 8th day of January, 1976

Ordered that defendant's motion to dismiss be denied; and it is further

Ordered that a further status call of this matter be held on June 4, 1976 at 9:30 a. m. in Courtroom No. 5 of the United States District Courthouse at which time the government will present a further written report from Dr. Thomas Mould with regard to the defendant's mental competency to stand trial.