**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Cory Anthony PINO, Defendant–Appellant.**

No. 09CA0647.

Colorado Court of Appeals, Div. II.

March 3, 2011.

---

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FOX.

Defendant, Cory Anthony Pino, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault. He contends the district court was without jurisdiction because the prosecution first filed a delinquency petition in the juvenile court and did not directly file this information in the district court until after the deadline for requesting a transfer hearing had expired. We disagree and therefore affirm.

On November 15, 2007, defendant—then age seventeen—punched the victim in the mouth. The physician who removed the victim's two fractured teeth opined that he had sustained serious bodily injury. *See* § 18–1–901(3)(p), C.R.S.2010 (defining "serious bodily injury").

On January 17, 2008, the prosecution filed a juvenile delinquency petition alleging that defendant had committed acts which, if committed by an adult, would constitute the offense of second degree assault. *See* § 18–3–203(1)(g), C.R.S.2010 ("A person commits the crime of assault in the second degree if ... [w]ith intent to cause bodily injury to another person, he causes serious bodily injury to that person ...."); § 18–3–203(2)(c), C.R.S. 2010 (second degree assault in violation of section 18–3–203(1)(g) is a per se crime of violence under section 18–1.3–406, C.R.S. 2010). Defendant was arrested on February 25, 2008, and advised in juvenile court the next day. On February 27, 2008, he posted bond.

Defendant next appeared before the juvenile court on March 17, 2008. The court appointed counsel for him and scheduled a pretrial conference for April 16, 2008.

On April 16, 2008, defense counsel requested a continuance to review the discovery materials. The court rescheduled the matter for May 14, 2008.

On May 14, 2008, the prosecutor informed the juvenile court that he intended to charge defendant as an adult by directly filing an information in district court. *See* § 19–2–517(1)(a)(II), (2), C.R.S.2010 (the prosecution may directly file criminal charges in district court against an offender who, when sixteen years of age or older, commits a crime of violence as defined by section 18–1.3–406). The juvenile court directed defendant to ap-

pear in district court the next morning. But, the juvenile court never conducted a transfer hearing. *See* § 19–2–518, C.R.S.2010 (a transfer hearing is a proceeding conducted by the juvenile court, based on a transfer petition alleging that the juvenile meets the statutory qualifications for adult prosecution in district court, in which the juvenile court makes a discretionary decision whether to transfer the matter based on its consideration of several statutorily enumerated factors).

On May 15, 2008, defendant appeared in district court. The prosecution presented the court with a motion to dismiss the juvenile case, a petition to directly charge defendant in district court, and an information charging him with a single count of second degree assault in violation of section 18–3–203(1)(g).

Defense counsel argued that the district court was without jurisdiction because the prosecutor had not directly filed the charges within thirty days of the date defendant had been initially advised in juvenile court. Counsel based this argument on a melding of a provision in the transfer statute, section 19–2–518(2), C.R.S.2010, which specifies that the prosecution may directly file an information "[a]fter filing charges in the juvenile court but prior to the time that the juvenile court conducts a transfer hearing," and C.R.J.P. 3.2(e), which states that "[a] request for waiver of jurisdiction to the district court for criminal proceedings shall be in writing and filed within thirty days of the initial advisement."

The court was not persuaded, observing that, because the juvenile court had never conducted a transfer hearing, the prosecution was authorized to directly file an information pursuant to section 19–2–104(1)(b), C.R.S. 2010:

(1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings: . . .

(b) Concerning any juvenile to which section 19–2–518 [the transfer statute] applies; except that, after filing charges in the juvenile court but prior to the time that the juvenile court conducts a transfer hearing, the district attorney

may file the same or different charges against the juvenile by direct filing of an information in the district court or by indictment pursuant to section 19–2–517. Upon said filing or indictment in the district court, the juvenile court shall no longer have jurisdiction over proceedings concerning said charges.

At the preliminary hearing, defendant reiterated his jurisdictional objection and argued that, in order to directly file an information after expiration of C.R.J.P. 3.2(e)'s thirty-day deadline for requesting a transfer hearing, the prosecution was obligated to show "good cause." *See* C.R.J.P. 3.2(e) ("Upon application to the court by the district attorney, and for good cause shown, a request [for waiver of jurisdiction to the district court] may, in the discretion of the court, be filed at any time prior to the adjudicatory trial."). The court disagreed and reaffirmed its prior ruling.

After defendant was convicted at trial, he filed this appeal challenging the district court's jurisdiction.

■ A "challenge to the trial court's jurisdiction raises a question of law, which we review de novo." *People v. Efferson,* 122 P.3d 1038, 1040 (Colo.App.2005).

Our task in construing statutes is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the plain and ordinary meaning of the statutory language. *See People v. Dist. Court,* 713 P.2d 918, 921 (Colo. 1986).

When the language is clear and unambiguous, statutes must be construed as written, without resort to interpretive rules of statutory construction. *People v. Zapotocky,* 869 P.2d 1234, 1238 (Colo.1994).

At one time, the statutes governing Colorado's juvenile justice system significantly limited a prosecutor's ability to directly file criminal charges against a juvenile if the prosecutor had initially filed a delinquency petition, based on identical allegations, in juvenile court:

When charges filed in juvenile court are identical to charges to be filed in district

court, the matter cannot be transferred from juvenile court to district court absent a transfer hearing, as required by [the transfer statute, then codified as section 19–2–806]. Consequently, in the absence of a transfer hearing, the district attorney . . . cannot directly file in district court the identical charges which he initially filed in juvenile court.

*J.D.C. v. Dist. Court,* 910 P.2d 684, 687 (Colo. 1996). The supreme court arrived at this conclusion based on the statute in effect at that time:

Nowhere in the [transfer] statute is there a provision that allows a prosecutor to refile identical charges in district court as those filed in juvenile court *after having requested a transfer hearing* in juvenile court. By including the terms "when" and "only" in [the transfer statute], the legislature manifested its intent that a prosecutor, having exercised his or her prosecutorial discretion to file charges in juvenile court, cannot later try to avoid the transfer hearing by directly filing the same charges in district court.

*Id.* at 686–87 (emphasis added). In addition, the court observed that, because former section 19–2–102(1)(b) gave the juvenile court exclusive original jurisdiction in proceedings concerning any juvenile to whom the transfer statute applied, "once a district attorney files a case in juvenile court *and requests a transfer hearing,* the juvenile court obtains exclusive original jurisdiction over the juvenile." *Id.* at 687 (emphasis added).

■ Soon after the supreme court announced its opinion in *J.D.C.,* the General Assembly amended the juvenile delinquency statutes and gave prosecutors broader discretion to decide how best to charge alleged juvenile offenders who are eligible to be charged as adults. Specifically, effective January 1, 1997, the General Assembly recodified section 19–2–102 as the present section 19–2–104(1)(b) and added the language (quoted above) establishing an exception to the juvenile court's exclusive jurisdiction in cases where the prosecution directly files charges. *See* Ch. 283, sec. 1, § 19–2–104(1)(b), 1996 Colo. Sess. Laws 1596–97. In addition, the General Assembly added parallel provisions

to the transfer and direct filing statutes, which were recodified as the present sections 19–2–517(2) and 19–2–518(2):

Notwithstanding the provisions of section 19–2–518, after filing charges in the juvenile court but prior to the time that the juvenile court *conducts* a transfer hearing, the district attorney may file the same or different charges against the juvenile by direct filing of an information in the district court or by indictment pursuant to this section. Upon said filing or indictment in the district court, the juvenile court shall no longer have jurisdiction over proceedings concerning said charges.

§ 19–2–517(2) (emphasis added).

After filing charges in the juvenile court but prior to the time that the juvenile court *conducts* a transfer hearing, the district attorney may file the same or different charges against the juvenile by direct filing of an information in the district court or by indictment pursuant to section 19–2–517. Upon said filing or indictment in the district court, the juvenile court shall no longer have jurisdiction over proceedings concerning said charges.

§ 19–2–518(2) (emphasis added).

■ All three of these amendments clearly identify the critical point in the proceedings: namely, when the juvenile court *conducts* a transfer hearing. Therefore, we conclude that, under the plain language of sections 19–2–104(1)(b), 19–2–517(2), and 19–2–518(2), a prosecutor has discretion to proceed by means of a direct filing in district court until such time as the juvenile court actually conducts a transfer hearing.

Because the conducting of a transfer hearing is the only event that vests the juvenile court with exclusive jurisdiction, it is immaterial whether, prior to directly filing charges, a prosecutor has *requested* a transfer hearing in the juvenile court. Hence, it necessarily follows that C.R.J.P. 3.2(e)'s thirty-day deadline for making such a request is irrelevant to our jurisdictional analysis (as is the "good cause" exception to that deadline). Accordingly, because in this case the juvenile court had not conducted a transfer hearing before the prosecution directly filed the information,

we conclude the district court had jurisdiction although more than thirty days had elapsed since defendant was initially advised in juvenile court.

While our conclusion rests entirely on the plain language of the relevant statutes, we nevertheless explain why defendant's policy argument is unpersuasive. According to defendant, our interpretation will allow a prosecutor to file a delinquency petition, refrain from requesting a transfer hearing, and then let the charges "linger indefinitely in juvenile court" while pondering whether to instead proceed by means of a direct filing in district court. But this argument overlooks a juvenile's ability to prevent excessive prosecutorial delay by demanding a speedy trial. *See* § 19–2–108(1), (2)(d), C.R.S.2010 ("[t]he juvenile's right to a speedy trial shall be governed by section 18–1–405, C.R.S., and rule 48(b) of the Colorado rules of criminal procedure," and the adjudicatory trial is subject to the speedy trial deadline "specified in section 19–2–708(1)"); § 19–2–708(1), C.R.S.2010 ("Except as otherwise provided in section 19–2–107 [which governs requests for a jury trial rather than a trial to the court], the court shall hold the adjudicatory trial within sixty days following the entry of a plea of not guilty."); *P.V. v. Dist. Court,* 199 Colo. 357, 359, 609 P.2d 110, 111 (1980) (the constitutional right to a speedy trial, which is mandated for every adult, must also be made available to a juvenile who is tried in a juvenile proceeding); *People in Interest of C.O.,* 870 P.2d 1266, 1269 (Colo.App.1994) (the statutory six-month speedy trial period is calculated separately for each criminal complaint brought against a defendant, whether in juvenile court or adult criminal court).

The judgment is affirmed.

Judge CASEBOLT and Judge LOEB concur.