Sanders, Janet L., J.
The defendant is charged with two counts of rape of a child with force and two counts of indecent assault and battery on a child under 14. The charges arise from an incident that allegedly occurred more than seven years ago. Since then, the defendant has repeatedly been evaluated for competency to stand trial and each time has been found to be incompetent. Because these findings are based on the existence of certain cognitive limitations that are unlikely to change over time, there is no realistic chance that the defendant will ever be able to stand trial. He now asks this Court to dismiss the indictments against him. For the following reasons, the defendant’s motion is Allowed.
BACKGROUND
The defendant is accused of fondling two boys, then four and five, and of performing fellatio on them after he had invited them into his Stoughton apartment to play video games in December 2003. After the visit, the boys’ babysitter became suspicious and informed *502 their mother other suspicions; the mother confronted the defendant about the allegations and then called police. The defendant made certain admissions to the mother and to the police about what had taken place. On February 26, 2004, he was indicted on the instant charges and released on bail. It is unclear whether the Commonwealth is still in contact with the alleged victims, who would now be eleven and twelve.
Since the indictments, the defendant has been evaluated on six different occasions by four different psychologists. Each has reached essentially the same conclusion—that is, that he has cognitive limitations which place him at or near the mentally retarded level. These limitations have been apparent since early childhood. Evaluating the defendant in 2004 and in May 2006 at the request of the Commonwealth, two psychologists, Dr. Allen Brown and Dr. Helene Pre-sskeischer, concluded that the defendant was not mentally capable of understanding and of waiving his Miranda rights. A third forensic psychologist, Dr. Ben Presskeischer, performed a neuropsychological examination on the defendant in May 2006 and concluded that his low intellectual functioning made it difficult for him to reason abstractly and to process the spoken word. Dr. Frederick Kelso, a court clinic psychologist, has evaluated the defendant three times—on June 29, 2006, on February 28, 2008, and finally on September 30, 2010. Each time, Dr. Kelso concluded that the defendant was incompetent to stand trial.[1]
Consistent with the earlier evaluations by the other psychologists, Dr. Kelso was of the opinion that the defendant has significant cognitive deficits, particularly in the areas of spoken language, vocabulary and abstract concept formation. Moreover, his underdeveloped social and interpersonal skills “are suggestive, but probably not diagnostic of some form of pervasive developmental disorder.” He was not, however, mentally ill, and therefore could not be committed to a psychiatric hospital. Nevertheless, his limitations did mean that he had no understanding of the charges against him or of the role that the judge, jury, and prosecutor played in a trial. Nor was he capable of assisting his attorney or of otherwise meaningfully participating in his own defense. More significantly, Dr. Kelso saw no real chance that the defendant would regain competency, noting that his cognitive deficits represented a “life long problem.” He concluded; “Having now evaluated Mr. Giunta on 3 separate occasions over the course of four years, I do not see any improvement in Mr. Giunta’s competency to stand trial . . . [and], I am not aware of any reason to believe that Mr. Giunta’s cognitive deficits would significantly change or improve as time goes by.”
Dr. Kelso noted that the defendant has sought help from multiple state agencies, with little success. In July 2006, Dr. Kelso submitted an application on the defendant’s behalf to the Department of Mental Retardation (now the Department of Developmental Services) but the defendant was determined to be ineligible. In 2008, a second application for services was denied. The defendant did receive counseling services at the South Bay Mental Health Center in Brockton between October 2008 and March 2010 but ultimately had trouble paying the fees. Dr. Kelso notes that lack of financial resources is also a barrier to his receiving outpatient sex offender treatment.
The defendant, now 31, currently resides in a Brockton rooming house with other men. He has worked sporadically at unskilled jobs, like pumping gas. According to his attorney, his ability to obtain or maintain steady employment has been hindered by the pendency of the instant charges. He has appeared on each and every court date (and there have been many). Since his release on bail in 2003, the defendant has not been charged with or arrested for any crime.
DISCUSSION
In seeking dismissal of the charges, the defendant relies on G.L.c. 123, §16(f). That statute sets forth the procedure that should be followed where a defendant is found and remains incompetent to stand trial. Specifically, “notice shall be sent to the department of correction which shall compute the date of the expiration of the period of time equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged and sentenced to the maximum sentence that he could have received.” The statute goes on to state: “On the final date of such period, the court shall dismiss the criminal charges against such person, or the court in the interest of justice may dismiss the criminal charges against such person prior to the expiration of such period.” G.L.c. 123, §16(f) (emphasis supplied). The maximum sentence for rape of a child with force is life imprisonment, with parole eligibility in 15 years; consequently, the court would not be required to dismiss the charges against the defendant in the instant case for many more years.[2] The defendant argues, however, that the statute permits this Court in its discretion to dismiss criminal charge earlier than that in the “interest of justice,” and that the “interest of justice” requires dismissal here. This Court agrees.
There is no case interpreting or applying that part of the statute on which the defendant relies. Apart from the statute, however, there are broader considerations that this Court brings to bear in resolving the issue before me. As the United States Supreme Court stated in Jackson v. Indiana, 406 U.S. 715, 740 (1972), “[dismissal of charges against an incompetent accused has usually been thought to be justified on grounds [of] . . . the Sixth-Fourteenth Amendment right to a speedy trial, or the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have the chance to prove his innocence.” Although the Supreme *503 Court declined to address the propriety of dismissal in the case before it (remanding the case to the state court for that determination), it did note that the appellant’s claim that the case should be dismissed was a “substantial one." 406 U.S. at 739. That is because there is something fundamentally unfair in keeping a criminal case open where the defendant, as a result of his incompetency, will never be in a position to challenge it on the merits.
Courts outside of Massachusetts have wrestled with these constitutional questions and reached different results. Thus, the Colorado Supreme Court in People v. Zapotocky, 869 P.2d 1234, 1243 (Colo. 1994), upheld the constitutionality of a statute that allowed dismissal of criminal charges against an incompetent defendant only if the district attorney sought dismissal. In holding that the statute did not offend due process, the court reasoned that a determination of incompetency could always turn out to be erroneous, particularly when it is made (as in the case before it) within a relatively short period of time after the crime itself. Moreover, the defendant could still raise a speedy trial violation if that became appropriate. The Indiana Supreme Court reached the opposite conclusion in a case where it was undisputed that the defendant was not only incompetent but would never regain competence to stand trial. There, as in the instant case, the defendant had not been committed or held in custody as a result of the criminal charges. The Indiana court nevertheless concluded that the mere act of holding criminal charges over the head of a defendant who will never be able to contest them offended principles of fundamental fairness.
Without directly resolving these constitutional issues, this Court does consider them important in determining how to interpret and apply G.L.c. 123, §16(1) to the case before me. The uncontradicted evidence before this Court is that the defendant will never become competent. Although the defendant is not confined or committed as a result of the charges, their mere pendency subjects him to public scorn and affects his ability to get employment. This Court is aware of the public safety concerns generated by these kinds of charges, but also recognizes that the merits of the case only grow weaker with time. The alleged victims were four and five when the charges arose, so that the passage of almost seven years has almost certainly had an impact on their ability to remember. The defendant’s statements to police could not be used against him because (as two different psychologists have concluded), he was unable to make a knowing waiver of his Miranda rights. Even with these weaknesses in the Commonwealth’s case, the defendant will never be able to contest the charges since he will never become competent. Under these circumstances, this Court concludes that the interest of justice compels dismissal.
CONCLUSION AND ORDER
For the foregoing reasons, the defendant’s motion to dismiss pursuant to G.L.c. 123, §16(1) is ALLOWED.

The Court does not have the Februaiy 2008 written evaluation by Dr. Kelso but it is clear from his most recent report that it did not contain any findings or conclusions different from the other two reports which this Court has reviewed.

The Commonwealth argues that the Motion to Dismiss should be denied because the defendant has not sent a notice to the department of correction to compute parole eligibility. Had the defendant sent the notice, however, it would not have yielded any information helpful to the Court in deciding the issues before it. As the Commonwealth itself acknowledges, the date on which the defendant would have become eligible for parole if he had been convicted for rape of a child by force would not have been before 2018. The defendant does not argue that he is entitled to dismissal because he would be eligible for parole now, but rather relies on that language in the statute which appears to allow dismissal before the parole eligibility date.