PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS SERVICES CORPORATION; Peter A. Vargas, M.D.; Boulder Abortion Clinic, P.C., Warren M. Hern, M.D.; James A. McGregor, M.D.; Michael D. Rudnick, M.D.; Aris M. Sophocles, Jr., M.D.; and Women's Choice of Boulder Valley, Inc., Plaintiffs,

v.

William OWENS, in his official capacity as Governor of the State of Colorado; David J. Thomas, in his official capacity as District Attorney for the First Judicial District, State of Colorado; A. William Ritter, Jr., in his official capacity as District Attorney for the Second Judicial District, State of Colorado; Glenn Davis, in his official capacity as District Attorney for the Third Judicial District, State of Colorado; Jeanne Marie Smith, in her official capacity as District Attorney for the Fourth Judicial District, State of Colorado; Michael Goodbee, in his official capacity as District Attorney for the Fifth Judicial District, State of Colorado; Sara Law, in her official capacity as District Attorney for the Sixth Judicial District, State of Colorado; Wyatt Angelo, in his official capacity as District Attorney for the Seventh Judicial District, State of Colorado; Stuart A. Van Meveren, in his official capacity as District Attorney for the Eighth Judicial District, State of Colorado; Mark McLucas Myers, in his official capacity as Dis-

trict Attorney for the Ninth Judicial District, State of Colorado; Gus Sanstrom, in his official capacity as District Attorney for the Tenth Judicial District, State of Colorado; Edward J. Rodgers, III, in his official capacity as District Attorney for the Eleventh Judicial District, State of Colorado; Robert Pastore, in his official capacity as District Attorney for the Twelfth Judicial District, State of Colorado; Mark Adams, in his official capacity as District Attorney for the Thirteenth Judicial District, State of Colorado; Paul R. McLimans, in his official capacity as District Attorney for the Fourteenth Judicial District, State of Colorado; Ronald E. Foster, in his official capacity as District Attorney for the Fifteenth Judicial District, State of Colorado; Gary Stork, in his official capacity as District Attorney for the Sixteenth Judicial District, State of Colorado; Robert S. Grant, in his official capacity as District Attorney for the Seventeenth Judicial District, State of Colorado; James Peters, in his official capacity as District Attorney for the Eighteenth Judicial District, State of Colorado; Al Dominguez, in his official capacity as District Attorney for the Nineteenth Judicial District, State of Colorado; Alexander M. Hunter, in his official capacity as District Attorney for the Twentieth Judicial District, State of Colorado; Frank J. Daniels, in his official capacity as District Attorney for the Twenty–First Judicial District, State of Colorado; and Michael F. Green, in his official capacity as District Attorney for the Twenty–Second Judicial District, State of Colorado; Defendants.

No. Civ.A. 99–WM–60.

United States District Court, D. Colorado.

Aug. 16, 2000.

Edward T. Ramey, Blain D. Myhre, Stacey Stern Chapman, Isaacson, Rosenbaurm, Woods & Levy, P.C., Denver, CO, Tim Atkeson, Arnold & Porter, Denver, CO, Kevin D. Paul, Office of Special Counsel, Planned Parenthood of the Rocky Mountains, Inc., Denver, CO, Mark Silverstein, American Civil Liberties Union Foundation of Colorado, Denver, CO, Louise Melling, Jennifer E. Dalven, Jody Yetzer, Talcott Camp, American Civil Liberties Union Foundation, Reproductive Freedom Project, New York City, for plaintiffs.

Ken Salazar, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, CO, Henry R. Reeve, Robert J. Whitley, Office of the District Attorney, Denver, CO, Jeanne M. Smith, District Attorney, Fourth Judicial District, Colorado Springs, CO, for defendants.

1. A copy of the Act is attached as an appen-

## MEMORANDUM DECISION AND ORDER

MILLER, District Judge.

### Introduction

The issue of this case is whether the Colorado Parental Notification Act (Act) [1], Colo.Rev.Stat. §§ 12–37.5–101, *et seq.* (1998), which requires a physician to notify the parents of a minor prior to performing an abortion upon her, violates the minor's rights protected by the United States Constitution.

The organizational plaintiffs are corporations that provide abortion services to women under the age of eighteen. The individual plaintiffs are physicians in the state of Colorado who perform abortions. The plaintiffs bring this action on behalf of themselves and their minor patients.

Defendant William Owens is the governor of the state of Colorado. The remaining defendants are the district attorneys from the twenty-two judicial districts of the state of Colorado who handle criminal indictments, informations, actions and proceedings within their respective districts. All defendants are sued in their official capacities.

### The Act

The Colorado Parental Notification Act—a citizen-initiated measure—was approved at Colorado's general election on November 3, 1998, and proclaimed law by the governor on December 31, 1998. Its legislative declaration states:

That family life and the preservation of the traditional family unit are of vital importance to the continuation of an orderly society; that the rights of parents to rear and nurture their children during their formative years and to be involved in all decisions of importance affecting such minor children should be protected and encouraged, especially as such parental involvement relates to the pregnancy of an unemancipated minor, recognizing that the decision by any

dix.

such minor to submit to an abortion may have adverse long-term consequences for her.

Colo.Rev.Stat. § 12–37.5–102.

"Minor" is defined as "a person under eighteen years of age," Colo.Rev.Stat. § 12–37.5–103(1), but no definition is provided for an "unemancipated" minor.

"Abortion" is defined as "the use of any means to terminate the pregnancy of a minor with knowledge that the termination by those means will, with reasonable likelihood, cause the death of that person's unborn offspring at any time after fertilization." Colo.Rev.Stat. § 12–37.5–103(3).

The Act generally prohibits physicians from performing abortions on an "unemancipated minor" until at least 48 hours after written notice has been delivered to the minor's parent, guardian or foster parent. Colo.Rev.Stat. §§ 12–37.5–103(2), 104(1). Delivery must be made to both of the minor's parents if they are living or to one parent if only one is living or one "cannot be served with notice." Colo.Rev.Stat. § 12–37.5–103(2). The 48–hour period does not begin to run until actual delivery is accomplished. Colo.Rev.Stat. § 12–37.5–104(1)(a). In lieu of personal delivery, notice may be sent "postpaid certified mail, addressed to the parent at the usual place of abode of the parent, with return receipt requested and delivery restricted to the addressee." Delivery is then presumed to occur at 12:00 noon on the next day of regular mail delivery. Colo.Rev. Stat. § 12–37.5–104(1)(e)(i).

Any person performing or attempting to perform an abortion in willful violation of the Act commits a class one misdemeanor [2] and is also liable for proximate damages. Colo.Rev.Stat. § 12–37.5–106(1). Anyone who encourages a pregnant minor to provide false information in order to induce a physician to perform an abortion commits a class five felony.[3] Colo.Rev.Stat. § 12–37.5–106(3).

The Act provides two exceptions to the notice requirement:

1. The persons entitled to notice certify they have already been notified; or,

2. The minor declares she is victim of child abuse or neglect by the persons entitled to notice and the physician has reported in accordance with the Child Protection Act of 1987.[4] Colo.Rev.Stat. § 12–37.5–105.

The Act also provides two affirmative defenses:

1. The physician reasonably relied upon representations by the minor as providing true information necessary to comply with the Act; or

2. The physician performed the abortion to prevent imminent death, and there was insufficient time to provide the required notice. Colo.Rev.Stat. § 12–37.5–106(2).

Finally, the Act contains a contingent judicial bypass effective in the event the Act is enjoined or restrained for lack of a judicial bypass. Colo.Rev.Stat. § 12–37.5–107(1). Under the bypass procedure, the minor may avoid parental notification if she petitions a judge to dispense with the notice requirements and the judge determines that such notice is not in her best interest or that the minor is sufficiently mature to make the abortion decision. The proceedings are to be conducted confidentially and decided without undue delay. Colo.Rev.Stat. § 12–37.5–107(2).

*Procedural History and*
*Remaining Claims*

On December 22, 1998, the plaintiffs filed their complaint in state court, asserting six claims for relief:

---

**2.** The sentencing for a class one misdemeanor is a range of imprisonment from 7 to 18 months and/or a fine of $500 to $5,000. Colo.Rev.Stat. § 18–1–106(1) (1999).

**3.** Punishment for a class five felony is a range of imprisonment of one to three years and/or a fine of $1000 to $10000. Colo.Rev.Stat. § 18–1–105(1)(a)(III) and (IV).

**4.** The Child Protection Act, Colo.Rev.Stat. §§ 19–3–101, *et seq.*, is part of the Colorado Children's Code, Colo.Rev.Stat. §§ 19–1–101, *et seq.*

1. The Act is facially unconstitutional under the United States Constitution because it lacks an exception to permit a physician to perform an abortion without notice or a waiting period to protect the health or life of the pregnant minor;

2. The Act fails to provide a judicial procedure to bypass the parental notification requirements in the case of mature, abused, or "best interest" children and thus violates the United States Constitution;

3. The contingent judicial bypass provided by the Act does not protect the federal constitutional rights of minors because it lacks adequate procedures to ensure confidentiality, expedition and appointment of counsel;

4. The Act violates the due process rights guaranteed by the Colorado Constitution;

5. The Act violates the Colorado Constitution's separation of legislative and judicial functions; and

6. The Act's definition of abortion unconstitutionally imposes a parental notification requirement on the use of contraceptives.

The plaintiffs seek declaratory relief that the Act violates both the federal and state constitutions and injunctive relief to prevent enforcement of the Act. The federal claims arise under 42 U.S.C. § 1983, asserting the Act is state action depriving plaintiffs of their rights and privileges secured by the Constitution. Plaintiffs also claim entitlement to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

On December 23, 1998, a hearing on the plaintiffs' motion for a temporary restraining order was held before Boulder County District Judge Morris Sandstead who entered a temporary restraining order against the then—lone district attorney defendant, Alex M. Hunter, district attorney for Boulder County.

On January 11, 1999, the then—defendant governor, Roy Romer, and defendant Hunter filed a Notice of Removal of the action to this court pursuant to 28 U.S.C. § 1446 because four claims for relief were based upon the United States Constitution. *See* 28 U.S.C. § 1441(a) and (b).

Upon removal, the plaintiffs sought to continue the temporary restraining order. They also filed a motion for certification of a class consisting of all district attorneys in Colorado. Pursuant to the parties' stipulation, the temporary restraining order was extended but the motion for certification of a class was denied.

As part of the stipulation, the plaintiffs filed an amended complaint naming all of the district attorneys for the twenty-two judicial districts in the state of Colorado, while the defendants agreed to refrain from enforcing the Act until entry of a final non-appealable judgment.

Upon my inquiry, all parties recommended against certification of the issues to the Colorado Supreme Court pursuant to Rule 21.1 of the Colorado Appellate Rules. Both sides in essence urged that the issues of this case, including any necessary statutory interpretation of state law, were inextricably tied to issues of federal constitutional law and should be decided in federal court. This is, of course, consistent with the defendants' decision to remove this case to federal court. In any case, a federal litigant need not await a state court interpretation before commencing a federal suit. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 108 S.Ct. 2138, 2151 n. 11, 100 L.Ed.2d 771 (1988). Indeed, certification is inappropriate where the statute at issue is not "obviously susceptible" to a limiting or narrowing construction to preserve its constitutionality.[5] *City of Houston v. Hill,*

---

5. In the recent decision of *Stenberg v. Carhart,* —— U.S. ——, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000), dealing with the Nebraska partial birth abortion law, a similar situation was presented: the Nebraska Attorney General

482 U.S. 451, 107 S.Ct. 2502, 2513–15, 96 L.Ed.2d 398 (1987).

Given removal to this court, the plaintiffs withdrew their claims of violations of the Colorado Constitution (fourth and fifth claims for relief), and those claims were dismissed without prejudice by minute order, dated January 14, 2000.

On April 26, 2000, and pursuant to the parties' joint motion, I granted defendants' motion for partial summary judgment dismissing plaintiffs' sixth claim for relief, asserting that the Act unconstitutionally defined "abortion" to require parental notification for prescriptions of contraceptives. This dismissal was based upon the undisputed fact that a person prescribing or providing contraceptives, including emergency contraception or the so-called "morning after pill," will not know with the statutorily prescribed "reasonable likelihood" that the contraceptives will "cause the death of that person's unborn offspring at any time after fertilization" as defined in the Act. *See* Colo.Rev.Stat. § 12–37.5–103(3). Accordingly, a prescription without parental notification would not violate the Act.

Defendants respond to the plaintiffs' complaint by denying the remaining claims for relief (one through three of the amended complaint) and assert that the statute is constitutional because: (1) the Colorado Children's Code, Colo.Rev.Stat. § 19–1–101, *et seq.*, should be incorporated into the Act in order to protect the health and life of the pregnant minor [6]; (2) a judicial bypass is not constitutionally required for a parental notification act that has an exception for abuse; and (3) the mechanism of the contingent judicial bypass procedure provides for confidentiality and expedition and imposes an obligation on judges to bypass notification if the stated requirements are met.

The parties have filed cross motions for summary judgment asserting that the issues are purely legal and may be decided on the basis of uncontested facts. As to the first claim for relief, I agree.

*Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter law. Fed.R.Civ.P. 56(c). The evidence is viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, when as here, the parties file cross motions for summary judgment, I need not consider evidence other than that filed by the parties. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 124 F.3d 1321, 1323 (10th Cir.1997). Accordingly, I have limited my review to the evidence the parties have submitted with their many filings as part of their cross motions. Nevertheless, I may still deny summary judgment if dispute remains as to any material fact. *Id.*

*Factual Background*

According to records of the Colorado Department of Public Health and Environment, 9,183 abortions were performed in Colorado in 1997 (1998 figures were not presented). Of those numbers, 1,012 abortions (or approximately 11%) were performed for women under the age of 18. The vast majority of all abortions performed (more than 85%) were performed within thirteen weeks of gestation.

With regard to parental knowledge, nationwide statistics indicate that at least 61% of minors seeking abortions do so with the knowledge of at least one parent. (Pls.' Ex. 2B, Henshaw Aff. ¶ 10.) There is a strong correlation of parental awareness with age of the minor. The younger the minor, the more likely the parent is aware

had not sought a narrowing interpretation in state court and did not ask the federal court to certify the interpretation question to the Nebraska Supreme Court. The Court determined that the statute was not "fairly susceptible" to a narrowing construction and therefore certification was inappropriate. *Id.* at 2617.

6. *See* Colo.Rev.Stat. § 19–1–104(3)(b) (authorizing expedited *ex parte* emergency medical orders).

of the abortion. (Pls.' Ex. 2B, Henshaw Aff. ¶ 11.) Nationally, 90% of those minors under 15 obtain an abortion with the parent's knowledge.

Planned Parenthood's statistics for Colorado are consistent with national averages. For the two-year period of 1996 and 1997, 59.2% of minors seen at its facilities informed at least one parent. (Defs.' Ex. 2B, Table II.) The statistical gradation by age classification is likewise present: all of the 13–year olds involved at least one parent; 88.3% of the 14–year olds did; 70.1% of the 15–year olds; 58.1% of the 16–year olds; and 46.9% of the 17–year olds informed at least one parent. (Defs.' Ex. 2B, Table II.) Numerous reasons are given for not involving a parent including fear of physical or emotional abuse, fear of punishment, fear of worsening already problematic family relationships, fear of losing a boyfriend, and even a desire to not threaten a parent's health. (Pls.' Ex. 11, Henshaw 204, Table 7.)

With regard to health issues, the parties agree that some minors will experience medical conditions during pregnancy that pose serious risks to their health. (Defs. Addendum Answer Br. at 6.) These conditions include preeclampsia, premature rupture of membranes, and inevitable spontaneous abortion.[7] *See Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 880, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Some of these conditions require immediate attention to avoid risk of serious health problems or even death.[8] *Id.* Preeclampsia, for example, calls for immediate action as delay can place the woman at risk for cerebral hemorrhage, liver failure, kidney failure, vision problems and coma. (*See, e.g.,* Hern Dep. at 60–61; Simon Dep. at 57.) Therefore, when a pregnant minor presents with one of these urgent medical conditions, delaying aggressive treatment in order to give notice pursuant to the Act may place the patient's health at risk in circumstances short of imminent death.[9] (Giles Dep. at 46–50; Brown Dep. at 237–51; Simon Dep. at 56–61; McGregor Aff. ¶ 5–46; Frederiksen Dep. at 69–71, 81–82, 138–39; Johnson Dep. at 24–25, 37–38; Hern Dep. at 95–96.)

### Discussion

The plaintiffs' first claim for relief is straightforward, namely that the Act is

---

7. The parties dispute whether or not ectopic pregnancies are covered by the Act. The defendants define an ectopic pregnancy as one in which the fertilized egg implants other than in the uterus and would thus be outside the confines of the definition of abortion contained in Colorado's criminal abortion statute. *See* Colo.Rev.Stat. § 18–6–101(3). Plaintiffs argue that the Act's definition is tied to fertilization and not implantation in the uterus. I need not resolve this particular issue because the defendants agree that there are other medical conditions short of threat of imminent death for which an exception to the Act's requirements must be provided.

8. While the defendants agree that minors may experience medical problems short of imminent death, the defendants argue that most patients who experience these problems will present during the routine course of pre-delivery care, that is, the physician will become aware of a medical problem in the context of a woman's desire to carry the baby to term rather than seeking an elective abortion. Nevertheless, the Act's requirements (and therefore inherent delay) apply for minors whether they present for the purpose of ob-

taining an elective abortion or for the purpose of carrying the baby to term.

9. In fact, the defendants' medical experts agree that some pregnant minors face medical emergencies for which delay required by the Act will pose serious health risks short of imminent death. (*See, e.g.,* Giles Dep. at 46–47 (There are serious conditions for which even delay for twenty-four hours can put women at "serious health risk of losing kidney function or damaging heart and lungs."); Giles Dep. at 48–49 (Women with chorioaminonitis require an immediate abortion to prevent endometritis, tubal infection, and subsequent infertility.); Brown Dep. at 237–51 (Severe preeclampsia at 20 weeks may require immediate action to deliver the pregnancy with knowledge that the infant will die [i.e. an immediate abortion].); Simon Dep. at 56 (A woman with preeclampsia will "get more and more edematous [swollen], she'll get fluid overload, her blood pressure will just go sky high, you obviously worry about circulatory problems, seizures, liver failure in the mother, stroke, cardiac overload, and heart failure, and eventually the mom dies."))

unconstitutional because it fails to provide an exception to the notice requirement when necessary to protect the health of minors short of imminent death. As to this claim, there is no genuine issue of material fact. As noted, it is uncontested that there are situations when a physician must act promptly to protect the health or life of the minor where the affirmative defense of imminent death would not apply. (Defs.' Addendum Answer Br. at 6.) As a consequence, and as both parties agree, the delay in the abortion inherent in the Act's notification process will result in adverse health consequences for some minors. Accordingly, this issue may be resolved purely as a matter of law, and I begin my analysis with a brief background of the law concerning state regulation of abortions performed on minors as the law existed at the time of the Act's passage.[10]

More than a quarter century ago, the Supreme Court held that women have the constitutional right, with some limitations, to choose abortion. *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Roe* provided a trimester framework that permitted limited regulation. As the pregnancy progresses, a woman's right to abortion is subject to increasing regulation in order to protect both the health of the woman and the state's legitimate interest in potential life. *Id.* at 163–66, 93 S.Ct. 705. Subsequent to viability, the state may regulate and even prohibit abortion with one exception: "where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Id.* at 165, 93 S.Ct. 705. A statute that "excepts from criminality only a life-saving procedure on behalf of the mother ... is violative of the Due Process Clause of the Fourteenth Amendment."[11] *Id.* at 164, 93 S.Ct. 705.

The Court soon confirmed that these rights applied to minor women as well. *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 74–75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."). Specifically, the Court held that a statute which imposed a blanket parental consent requirement, except when a doctor certified that abortion was necessary to preserve the mother's life, was unconstitutional.

Nevertheless, the Court does recognize the special legal status of the minor and, in particular, her relationship to her parents. In *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the Court noted three reasons for not equating the constitutional rights of a minor with those of an adult: "The peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." *Id.* at 634, 99 S.Ct. 3035. With regard to the role of the parents, the Court referred to several decisions to emphasize its importance to our society, including *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (child not mere creature of state; those who raise her have the right and "high duty" to prepare her for "additional obligations"); *Wisconsin v. Yoder,* 406 U.S. 205, 233, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("[T]he duty to prepare the child for 'additional obligations' ... must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship."); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ("[I]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Ginsberg v. New York,* 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d

---

**10.** For a discussion of the evolution of parental involvement statutes, see *Planned Parenthood of Blue Ridge v. Camblos,* 155 F.3d 352, 361–67 (4th Cir.1998).

**11.** The Fourteenth Amendment provides in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

195 (1968) ("[D]eeply rooted in our Nation's history and tradition, is the belief that the parental role implies a substantial measure of authority over one's children."). Accordingly, the state may enact laws to assist parents who have the primary responsibility for the child's well-being.

However, state support of parents is not without limits. The Court in *Bellotti* invalidated a Massachusetts statute requiring parental consent in all circumstances except where the parent is not available or the abortion need constitutes "an emergency requiring immediate action." 443 U.S. at 630, 99 S.Ct. 3035. Justice Powell, in his plurality opinion, found that children are particularly vulnerable to their parents' efforts to obstruct an abortion and her access to court. *Id.* at 647, 99 S.Ct. 3035. Accordingly, he established the basic principle that if parental consent is required, the statute must establish an alternative procedure for obtaining an abortion without parental consent in order to prevent parents from exercising an absolute and possibly arbitrary veto over their children's constitutional rights (commonly referred as a judicial bypass). *Id.* at 643, 99 S.Ct. 3035. Justice Powell outlined the essentials of such procedures to be that the pregnant minor has access to a proceeding with anonymity and sufficient expedition to allow an abortion by showing either: "(1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." *Id.* at 643–644, 99 S.Ct. 3035. These two exceptions are commonly referred to as the "mature" and "best-interest" exceptions.

Since *Bellotti,* parental notification statutes, as opposed to parental consent statutes, have generally passed constitutional muster. *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (parental notice is constitutional for unemancipated minor who made no claim of maturity); *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (statute allowed a bypass procedure to prove maturity or best interest). As compared to parental consent statutes, notification statutes do not grant parents the legal right to make the ultimate decision. "Notice statutes are not equivalent to consent statutes because they do not give anyone a veto power over a minor's abortion decision." 497 U.S. at 511, 110 S.Ct. 2972. In making its rulings, the Supreme Court has expressly reserved the question of whether parental notification statutes require a judicial bypass procedure.[12] Not surprisingly, there is a split in circuits as to whether a parental notification act requires a judicial bypass procedure.[13]

The next important stage of the evolution of this law was the decision of *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), confirming by plurality opinion the essential holding of *Roe.* The Court concluded that women have a constitutional right, rooted in the Fourteenth Amendment's Due Process Clause, to choose an abortion without unwarranted government interference based on her right to bodily integrity and privacy. *Id.* at 848–52, 112 S.Ct. 2791. Discounting the trimester approach of *Roe,* the joint opinion ultimately holds that the issue is whether the regulation violates due process by placing an undue burden[14] on a

**12.** *Lambert v. Wicklund,* 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (per curiam).

**13.** The Eighth Circuit held that a parental notification act without a bypass procedure for mature or best-interest children was facially unconstitutional. *Planned Parenthood, Sioux Falls Clinic v. Miller,* 63 F.3d 1452 (8th

Cir.1995). The Fourth Circuit suggests that such a procedure is not required. *Planned Parenthood of Blue Ridge v. Camblos,* 155 F.3d 352 (4th Cir.1998). Given my ruling, I need not resolve this issue in this case.

**14.** Undue burden is "shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in

woman's right to choose abortion. *Id.* at 874, 112 S.Ct. 2791.

Focusing specifically on the minor's right to abortion, the Court in *Casey* acknowledged the importance of parental involvement and the "quite reasonable assumption that minors will benefit from consultation with their parents and that children will often not realize that their parents have their best interests at heart." *Id.* at 895, 112 S.Ct. 2791. The Court, however, recognized there must be exceptions to the requirement of parental consent. In particular, the Court approved the parental consent provision because it had an exception for medical emergencies and a judicial procedure for exempting mature and "best-interest" minors. *Id.* at 898–99, 112 S.Ct. 2791.

With regard to the plaintiffs' first claim for relief, the Court in *Casey* reaffirmed the state may not regulate or proscribe abortion "where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Id.* at 879, 112 S.Ct. 2791. Indeed, the Court had previously made plain that the woman's health must be the paramount consideration. *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 768–69, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986). As the Tenth Circuit

has noted, "[t]he importance of maternal health is a unifying thread that runs from *Roe* to *Thornburgh* and then to *Casey*. In fact, defendants concede that *Thornburgh's* admonition that a woman's health must be the paramount concern remains vital in wake of *Casey*." *Jane L. v. Bangerter,* 61 F.3d 1493, 1504 (10th Cir.1995). "[T]he essential holding of *Roe* forbids a State to interfere with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health." *Casey,* at 880, 112 S.Ct. 2791 (concluding that, given the medical emergency definition exception, there was no undue burden on the woman's abortion right).

With this backdrop in mind, I note that, as compared to other notification statutes,[15] the Act is devoid of any such protective exception and, without more, appears unconstitutional on its face.

■ Most recently, the Supreme Court confirmed the constitutional need for a health exception in both pre- and post-viability abortion regulations. *Stenberg v. Carhart,* —— U.S. ——, 120 S.Ct. 2597, 2609, 147 L.Ed.2d 743 (2000). In effect, the Supreme Court implicitly adopted a *per se* rule[16] that abortion regulations must contain an exception for preservation of the health or life of the mother. *Id.*

the path of a woman seeking an abortion . . ." *Casey,* 505 U.S. at 877, 112 S.Ct. 2791.

**15.** *See, e.g., Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 844, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("The Act exempts compliance with these . . . requirements in the event of a 'medical emergency.' "); *see also Lambert v. Wicklund,* 520 U.S. 292, 294 n. 1, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) ("The notice requirement does not apply if 'a medical emergency exists and there is insufficient time to provide notice.' "); *see also Planned Parenthood v. Miller,* 63 F.3d 1452, 1456 (8th Cir.1995) ("The attending physician certifies in the pregnant minor's medical record that, on the basis of the physician's good faith clinical judgment, a medical emergency exists that so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create a serious risk of substantial and irreversible impairment of a major bodily function and there is insufficient time to pro-

vide the required notice."); *see also Planned Parenthood v. Camblos,* 155 F.3d 352, 355 (1998) (The Act expressly permits abortions "in circumstances in which either an abortion is immediately necessary to prevent the mother's death or there is insufficient time to permit notification without exposing the minor to serious health risk."); *but see Hodgson v. Minnesota,* 497 U.S. 417, 110 S.Ct. 2926, 2930, 111 L.Ed.2d 344 (1990) ("[N]otice is mandatory unless the attending physician certifies that an immediate abortion is necessary to prevent the woman's death and there is insufficient time to provide the required notice." However, the health issue of this case was not addressed.).

**16.** The Court found an undue burden is generated even if the statute threatens only relatively few women. *See Stenberg v. Carhart,* 120 S.Ct. at 2611. In this case, the evidence is uncontested by the defendants that the health of some minors will be threatened by implementation of this Act without incorporation of a health exception from the Colora-

Therefore, an abortion regulation that puts a woman's health in jeopardy, regardless of her age or maturity, is unconstitutional. That fact that the threat to health occurs infrequently does not render the statute constitutional because "the state cannot prohibit a person from obtaining treatment simply by pointing out that most people do not need it." *Id.* at 2611. Thus, an Act that limits its health exception only to those situations when the mother's life is in imminent danger is not sufficient. Accordingly, "[such a] lack of a health exception necessarily renders the statute unconstitutional." *Id.* at 2618 (O'Connor, J., concurring).

Defendants argue, however, that I should decide, as a matter of statutory construction, that the Colorado Children's Code remains applicable to pregnant minors and, since the Code provides an expedited *ex parte* procedure whereby a physician can obtain a court order to meet the minor's health needs, the constitutional requirement of a health exception to the Act's regulation of abortion is satisfied.[17] To achieve that interpretative result, the defendants rely principally on two well-recognized rules of construction.

The first is that, if construction is allowed, an interpretation which preserves the constitutionality of the Act should be adopted. *Colorado Ground Water Comm'n. v. Eagle Peak Farms,* 919 P.2d 212, 221 (Colo.1996); *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994). The Supreme Court, in a frequently cited case, has stated that the "Court will first determine whether it is fairly possible to interpret a statute in a manner that renders it constitutionally valid." *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988); see also *Branson School Dist. RE–82 v. Romer,* 161 F.3d 619, 636 (10th Cir. 1998).

The second rule of construction is the vehicle by which a health exception would be imported to or superimposed upon the provisions of the Act. That rule, known as "*in pari materia*" construction, holds that when determining the legislative intent of the statute being construed, that statute should be read in conjunction with other statutes relating to the same subject or purpose. *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359, 1364–64 (Colo. 1992). Defendants urge that the Children's Code and the Act share common purposes and subject matter, thereby permitting the protection of the minor's health pursuant to the Code to be read into the Act, even though the Act contains no mention of those matters. Defendants' arguments, therefore, require that I interpret the Act.

In construing a state statute, a federal court is bound by the state's highest court's interpretation. If, as in this case, none exists, then I must look to the state's rules of statutory construction to determine the legislative intent and the ultimate application of the law.[18] *Phelps v. Hamilton,* 59 F.3d 1058, 1071 (10th Cir.1995).

do Children's Code. Therefore, this case falls squarely within the confines of *Stenberg* which requires a health exception even if the health exception will be used only infrequently or even rarely. Alternatively, I note that even without labeling the *Stenberg* holding as a *per se* rule, I would reach the same conclusion under *Casey's* undue burden analysis. "The proper focus of the constitutional inquiry in the group for which the law is a restriction" (*Casey* at 894, 112 S.Ct. 2791), namely that for those minors who need a health exception. Since virtually all of that relevant class would be impacted by the lack of a health exception, the law is unconstitutional on its face because in "a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey* at 895, 112 S.Ct. 2791.

17. Plaintiffs dispute whether the Code provisions are sufficiently adequate to allow the Act to pass constitutional muster, arguing that the requirements of the Code could cause delay in the face of an immediate need for expedited abortion and, in any case, require reasonable efforts to notify parents. *See* Colo. Rev.Stat. § 19–1–104(3)(b).

18. The same rules apply to citizen initiated measures—such as this Act—as apply to legis-

■ As is normally the case, I begin the statutory interpretation undertaking with the most basic rule: I must first determine whether or not ambiguity exists which gives rise to the need for interpretation. *See Colorado v. Nieto,* 993 P.2d 493, 502 (Colo.2000). As the Colorado Supreme Court has repeatedly held, when a statute is unambiguous, the court must apply it as written and must not resort to rules of statutory construction, even to avoid a constitutional conflict. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo. 1992); *People v. Andrews,* 871 P.2d 1199, 1201 (Colo.1994); *Nicholas v. People,* 973 P.2d, 1213, 1216 (Colo.1999); *People v. Zapotocky,* 869 P.2d at 1240; *Phelps v. Hamilton,* at 1070 (stating federal courts do not have power to disregard plain language in a statute to preserve it from constitutional attack).

■ A statute is ambiguous if the plain language of the statute permits one or more reasonable alternative interpretations. *See Colorado v. Nieto,* at 502 (explaining that a statutory provision is ambiguous if it can be reasonably applied to reach two distinct and opposite results); *see also People v. Terry,* 791 P.2d 374, 376 (Colo.1990) ("[T]he language in the subsections is ambiguous—that is [because] it is susceptible to reasonable, alternative interpretations."). Therefore, "where the words chosen by the legislature are unclear in their common understanding, or capable of two or more constructions leading to different results, the statute is ambiguous." *Colorado v. Nieto,* at 500–01 ("[A] statute is ambiguous [if] ... the words chosen do not inexorably lead to a single result.").

■ The same basic principle remains applicable when a party urges reading another statute *in pari materia,* as it is error to do so when the statute or regulation is unambiguous. *United States v. Fisher,* 456 F.2d 1143, 1145 (10th Cir.1972). *Suth-*

lative enactments. *Bickel v. City of Boulder,* 885 P.2d 215, 228 n. 10 (Colo.1994); *Branson School Dist. Re–82 v. Romer,* 161 F.3d 619, 635 (10th Cir.1998).

*erland,* the oft-sighted authority on statutory construction, states simply that: "other statutes dealing with the same subject as the one being construed—commonly referred to as statutes *in pari materia*—... may not be resorted to if the statute is clear and unambiguous." 2B *Sutherland,* Statutory Construction § 51.01 at 117 (5th Ed.1992). Accordingly, the threshold issue is whether or not the Act is ambiguous. Given the long-recognized need for a health exception to abortion regulations, the sharper focus of the ambiguity issue is whether there is any ambiguity concerning exceptions to the Act's notification requirements.

The only specific exceptions to the notice requirement are contained in § 12–37.5–105:

(1) The person or persons who are entitled to notice certify in writing that they have been notified.

(2) The pregnant minor declares that she is a victim of child abuse or neglect by the acts or omissions of the person who would be entitled to notice, as such acts or omissions are defined in "The Child Protection Act of 1987," as set forth in Title 19, Art. III, of the Colo. Rev.Stat. and any amendments thereto, and the attending physician has reported such child abuse or neglect as required by the said Act.

Thus, there is no mention of an exception to preserve the health of the minor. It is also noteworthy that, although reference is made to the Colorado Children's Code [19] in the second exception, there is no similar reference to the Children's Code provision which allows expedited *ex parte* emergency orders where the "child's welfare may be endangered" or "emergency medical or surgical treatment is reasonably necessary...." Colo.Rev.Stat. § 19–1–104(3)(b).

**19.** "The Child Protection Act of 1987" is part of Title 19 which "shall be known and may be cited as the 'Colorado Children's Code.'" Colo.Rev.Stat. § 19–1–101.

Otherwise, the only other reference to health and life of the pregnant minor is the affirmative defense if "the abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice." § 12–37.5–106(2)(b). Disregarding the fact that an affirmative defense is significantly different from an exception to the reach of a criminal statute,[20] the health exception has never been satisfied only by protection against imminent death. Since 1973, the Supreme Court has emphasized that a law whose only exception is to preserve the life of the mother is unconstitutional. *See, e.g., Roe v. Wade,* 410 U.S. at 163–64, 93 S.Ct. 705 (1973) (stating that a statute cannot survive constitutional attack if it is limited to the single reason to save the mother's life); *Planned Parenthood v. Danforth,* 428 U.S. at 68–72, 96 S.Ct. 2831. Therefore, the exception must include preservation of health even though the condition is not life threatening. *See Stenberg v. Carhart,* 120 S.Ct. at 2609–13.

■ I therefore conclude that the language of the Act concerning exceptions to its reach is plain and unambiguous. However, even if I were to find ambiguity to allow consideration of rules of interpretation, I would likewise hold that the sole saving interpretation suggested by defendants—reading the Colorado Children's Code health exception *in pari materia* into the Act—would not be appropriate.

In the first instance, the necessary predicate for use of *in pari materia* —namely that the statutes relate to the same subject or purpose—is not present. The Act's declared purposes are concerned with family life, preservation of the family unit, and the rights of parents. Expression of concern for the minor is limited to the observation that an abortion "may have adverse long-term consequences for her."[21] Colo. Rev.Stat. § 12–37.5–102. The Children's Code, on the other hand, although recognizing the importance of family, places primary concern with the child in order to serve her welfare and the interests of society. Colo.Rev.Stat. § 19–1–102(1)(a). As such, the Children's Code is to be "liberally construed to serve the welfare of children and the best interests of society." Colo.Rev.Stat. § 19–1–102(2). The emphasis of the Act is on the undeniably important significance of the family and the role of parents. But it does not assert, even as a subsidiary purpose, a goal to protect the health of minors short of imminent death. Thus, the legislative declaration does not provide any positive indication that the Act should be interpreted in conjunction with the Colorado Children's Code to protect the health of the minor. This legislative omission is carried forward in the Act's two explicit exceptions and two explicit affirmative defenses.[22]

I also observe that the legislative history of the Act addresses only the two specific exceptions found in Colo.Rev.Stat. § 12–37.5–105. The so-called "Blue-book," prepared by the Legislative Council of the Colorado General Assembly as an analysis of statewide ballot proposals (Defs.' Ex. A), contains descriptions of the Act and the background to its adoption which may be used to determine the intent of the voters. *See In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549, 554 (Colo.1999). However, neither the sum-

---

**20.** An affirmative defense does not preclude the filing of criminal charges against a physician. Further, and even though the ultimate burden of proof beyond a reasonable doubt always remains on the government, any defendant would have a threshold burden to provide some credible evidence on that issue. Colo.Rev.Stat. § 18–1–407; *People v. Janes,* 982 P.2d 300, 303 (Colo.1999).

**21.** I assume that the Colorado voters did not · intend to place minor's health at risk. Never-

theless, the drafters of the Act, whether by oversight or purposeful decision, failed to include preservation of the minor's health or even welfare as an objective of the Act.

**22.** It is also noteworthy that the drafters did not elect to place this statute within Title 19 as part of the Children's Code but instead placed it under Title 12 dealing with professions and occupations impliedly directing its terms toward health care providers.

mary description nor the background section make reference to the legal need to provide an exception to preserve the minor's health, nor does any part of the "Blue Book" suggest that the Act would be administered in the context of the Colorado Children's Code.[23]

Further, the defendants' specific *in pari materia* argument—that the provision for an *ex parte* emergency order by a juvenile judge found in the Colorado Children's Code may be imported into the Act to provide the required health care exception—would essentially necessitate re-writing the Act to install a third exception under § 12–37.5–105. Without deciding whether the Children's Code's provision for emergency orders would satisfy the constitutional requirements, its importation into § 12–37.5–105 would be inconsistent with the express language that "no notice shall be required," as the imported provision would contradictorily require reasonable efforts for notification. Such inconsistencies do not serve the general purposes of *in pari materia* construction to effectuate legislative intent and "to give consistent, harmonious and sensible effect to all its parts." *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 (Colo.1991). Thus, importing the Children's Code section creates conflict which would necessitate even further construction to avoid apparent inconsistencies.

Similarly, to import the Children's Code exception would seem inconsistent with the explicit affirmative defense for imminent death which strongly suggests that health is a consideration only in the most extreme emergency. To incorporate the Children's Code's exception for reasonably necessary medical treatment would virtually render the affirmative defense meaningless. An interpretation that renders other portions of the Act essentially mere surplusage is not proper. *See People v. Terry,* 791 P.2d 374, 376 (Colo.1990) ("[C]onstructions that would render meaningless a part of the statute should be avoided."); *see also People v. Marquez,* 983 P.2d 159, (Colo.App. 1999) (same). Accordingly, I conclude that an *in pari materia* interpretation cannot save the constitutionality of the Act.[24]

■ In sum, I conclude that the Act's language is plain and unambiguous; it does not contain an exception to the notice requirement when it is medically necessary for the preservation of the mother's health to proceed without notice; it is not fairly susceptible to saving or narrowing construction to preserve the Act's constitutionality;[25] and, hence, the Act deprives some pregnant minor women of their constitutional rights.

Because their resolution is not necessary to decide this case, I do not address the plaintiffs' other claims.

*Conclusion and Order*

Families are of vital importance to our society, and laws or regulations designed to support or enhance family relationships—including parental involvement in a minor's decision whether to abort her pregnancy—are understandable objectives

**23.** It is ironic that the stated "Arguments Against [Adoption of the Act]" contained in the "Blue Book" do not make specific reference to the absence of a health care exception, although it does argue that the "proposal may be detrimental to a minor's health." (Defs.' Ex. A.)

**24.** Confirming this result are other rules of interpretation. For example, the principle that express mention of one exception excludes others (*expressio unius est exclusio alterius*) applies. The express mention of two exceptions, particularly when one exception references the Children's Code, should exclude importing a third exception from the same Code. *Nicholas v. People,* 973 P.2d 1213, 1216–17 (Colo.1999); *Jane L. v. Bangerter,* 61 F.3d at 1501 ("[I]f a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded.").

Also, the Act, as a later and more specific statute, governs. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901, 908 (Colo. 1993); *Jones v. Cox,* 828 P.2d 218, 222 (Colo. 1992).

**25.** Accordingly, and as discussed above in Note 6 and its accompanying text, this is not an appropriate case for certification to the Colorado Supreme Court.

of legislation or regulation. It is fundamental to our constitutional system of individual rights, however, that those legitimate legislative objectives cannot be purchased at the expense of individual rights and liberties. No matter how worthy the goals of the Colorado Parental Notification Act, its drafters have overlooked or disregarded the protection of the minor's health. For more than a quarter century, the Supreme Court has required that any abortion regulation except from its reach an abortion medically necessary for the preservation of the mother's health. The Act plainly fails to provide such a health exception, and the facts indisputably show that the delay inherent in the Act's notification requirements will place some women at risk of serious health problems or even death. Therefore, the Colorado Parental Notification Act violates the rights of minor women protected by the Fourteenth Amendment to the United States Constitution.

Accordingly, it is ordered:

1. Plaintiffs' Motion for Summary Judgment is granted;

2. Pursuant to the Declaratory Judgment Act, I declare that the Colorado Parental Notification Act, Colo.Rev.Stat. § 12–37.5–101 et seq. (1998) is unconstitutional for the reasons stated;

3. Effective immediately, the defendants are permanently enjoined from enforcing the Colorado Parental Notification Act, Colo.Rev.Stat. § 12–37.5–101 et seq. (1998);

4. In accordance with 42 U.S.C. § 1988, the plaintiffs, as prevailing parties in this action pursuant to 42 U.S.C. § 1983, are entitled to reasonable attorney fees; and

5. Plaintiffs, as prevailing parties, may have their costs pursuant to Fed.R.Civ.P. 54(d)(1).

## Appendix

§ 12–37.5–101. Short title. This article shall be known and may be cited as the "Colorado Parental Notification Act."

§ 12–37.5–102. Legislative declaration. The people of the state of Colorado, pursuant to the powers reserved to them in Article V of the Constitution of the state of Colorado, declare that family life and the preservation of the traditional family unit are of vital importance to the continuation of an orderly society; that the rights of parents to rear and nurture their children during their formative years and to be involved in all decisions of importance affecting such minor children should be protected and encouraged, especially as such parental involvement relates to the pregnancy of an unemancipated minor, recognizing that the decision by any such minor to submit to an abortion may have adverse long-term consequences for her.

The people of the state of Colorado, being mindful of the limitations imposed upon them at the present time by the federal judiciary in the preservation of the parent-child relationship, hereby enact into law the following provisions.

§ 12–37.5–103. Definitions. As used in this article, unless the context otherwise requires:

(1) "Minor" means a person under eighteen years of age.

(2) "Parent" means the natural or adoptive mother and father of the minor who is pregnant, if they are both living; one parent of the minor if only one is living, or if the other parent cannot be served with notice, as hereinafter provided; or the court-appointed guardian of such minor if she has one or any foster parent to whom the care and custody of such minor shall have been assigned by any agency of the state or county making such placement.

(3) "Abortion" for purposes of this article means the use of any means to terminate the pregnancy of a minor with knowledge that the termination by those means will, with reasonable likelihood, cause the

death of that person's unborn offspring at any time after fertilization.

**§ 12–37.5–104. Notification concerning abortion.** (1) No abortion shall be performed upon an unemancipated minor until at least 48 hours after written notice of the pending abortion has been delivered in the following manner:

(a) The notice shall be addressed to the parent at the dwelling house or usual place of abode of the parent. Such notice shall be delivered to the parent by:

(I) The attending physician or member of the physician's immediate staff who is over the age of eighteen, or

(II) By the sheriff of the county where the service of notice is made, or by his deputy, or

(III) By any other person over the age of eighteen years who is not related to the minor.

(b) Notice delivered by any person other than the attending physician shall be furnished to and delivered by such person in a sealed envelope marked "Personal and Confidential" and its content shall not in any manner be revealed to the person making such delivery.

(c) Whenever the parent of the minor includes two persons to be notified as provided in this article and such persons reside at the same dwelling house or place of abode, delivery to one such person shall constitute delivery to both, and the 48–hour period shall commence when delivery is made. Should such persons not reside together and delivery of notice can be made to each of them, notice shall be delivered to both parents, unless the minor shall request that only one parent be notified, which request shall be honored and shall be noted by the physician in the minor's medical record. Whenever the parties are separately served with notice, the 48–hour period shall commence upon delivery of the first notice.

(d) The person delivering such notice, if other than the physician, shall provide to the physician a written return of service at the earliest practical time, as follows:

(I) If served by the sheriff or his deputy, by his certificate with a statement as to date, place and manner of service and the time such delivery was made.

(II) If by any other person, by his affidavit thereof with the same statement.

(III) Return of service shall be maintained by the physician.

(e)(I) In lieu of personal delivery of the notice, the same may be sent by postpaid certified mail, addressed to the parent at the usual place of abode of the parent, with return receipt requested and delivery restricted to the addressee. Delivery shall be conclusively presumed to occur and the 48–hour time period as provided in this article shall commence to run at 12:00 o'clock noon on the next day on which regular mail delivery takes place.

(II) Whenever the parent of the minor includes two persons to be notified as provided in this article and such persons reside at the same dwelling house or place of abode, notice addressed to one parent and mailed as provided in the foregoing subparagraph shall be deemed to be delivery of notice to both such persons. Should such persons not reside together and notice can be mailed to each of them, such notice shall be separately mailed to both parents unless the minor shall request that only one parent shall be notified, which request shall be honored and shall be noted by the physician in the minor's medical record.

(III) Proof of mailing and the delivery or attempted delivery shall be maintained by the physician.

**§ 12–37.5–105. No notice required— when.** No notice shall be required pursuant to this article if:

(1) The person or persons who are entitled to notice certify in writing that they have been notified.

(2) The pregnant minor declares that she is a victim of child abuse or neglect by

the acts or omissions of the person who would be entitled to notice, as such acts or omissions are defined in "The Child Protection Act of 1987", as set forth in title 19, article 3, of the Colorado Revised Statutes, and any amendments thereto, and the attending physician has reported such child abuse or neglect as required by the said act.

**§ 12–37.5–106. Penalties—damages—defenses.** (1) Any person who performs or attempts to perform an abortion in willful violation of this article

, (a) Commits a class 1 misdemeanor and shall be punished as provided in section 18–1–106 C.R.S.; and

(b) Shall be liable for damages proximately caused thereby.

(2) It shall be an affirmative defense to any criminal or civil proceedings if the person establishes that:

(a) The person relied upon facts or information sufficient to convince a reasonable, careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this article were bona fide and true, or

(b) The abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice.

(3) Any person who counsels, advises, encourages or conspires to induce or persuade any pregnant minor to furnish any physician with false information, whether oral or written, concerning the minor's age, marital status, or any other fact or circumstance to induce or attempt to induce the physician to perform an abortion upon such minor without providing written notice as required by this article commits a Class 5 felony and shall be punished as provided in section 18–1–105, C.R.S.

**§ 12–37.5–107. Judicial bypass—when operative.** (1) If section 12–37.5–104 of this article is ever temporarily, preliminarily or permanently restrained or enjoined due to the absence of a judicial bypass provision, the said section shall be enforced as though the following provisions were incorporated as subsection (2) of section 104, provided however that if any such restraining order or injunction is stayed, dissolved or otherwise ceases to have effect, section 104 shall have full force and effect without the addition of the following subsection (2):

(2)(a) If any pregnant minor elects not to allow the notification of any parent, any judge of a court of competent jurisdiction may, upon petition filed by or on behalf of such minor enter an order dispensing with the notice requirements of this article if the Judge determines that the giving of such notice will not be in the best interest of the minor, or if the court finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to have an abortion. Any such order shall include specific factual findings and legal conclusions in support thereof and a certified copy of such order shall be provided to the attending physician of said minor and the provisions of section 12–37.5–104(1) and section 12–37.5–106 of this article shall not apply to the physician with respect to such minor.

(b) The court, in its discretion, may appoint a guardian ad litem for the minor and also an attorney if said minor is not represented by counsel.

(c) All court proceedings herein shall be confidential and shall be given preference over other pending matters, so that the court may reach a decision without undue delay.

(d) An expedited confidential appeal shall be available to any such minor for whom the court denies an order dispensing with notification as required by this article. Upon the minor's representation as contained in her petition, or otherwise, that no funds are available to her for payment of filing fees, no filing fees shall be required in either the trial court or appellate court.

**§ 12–37.5–108. Limitations.** (1) This article shall in no way be construed so as to:

(a) Require any minor to submit to an abortion, or

(b) Prevent any minor from withdrawing her consent previously given to have an abortion, or

(c) Permit anything less than fully informed consent before submitting to an abortion.

(2) This article shall in no way be construed as either ratifying, granting or otherwise establishing an abortion right for minors independently of any other regulation, statute or court decision which may now or hereafter limit or abridge access to abortion by minors.